# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURA J. EATON,<br>    Plaintiff, | Civil Action No. 1:16-cv-279 |
| v. | District Judge Baxter |
| RICHARD FIGASKI, et al,<br>    Defendants. | |

## **MEMORANDUM OPINION**[1]

United States District Judge Susan Paradise Baxter

Three separate motions for judgment on the pleadings are before the Court: one by Defendant Millcreek Township [ECF No. 25]; one by Defendants Bucko, Mitchell and Tesore (the Police Defendants) [ECF No. 27]; and one by Defendants Figaski and Groh (the Township Supervisor Defendants) [ECF No. 31].[2] Plaintiff has filed a brief in opposition to each of the separate motions for judgment on the pleadings [ECF No. 34 (Opposition to Millcreek Township's motion); ECF No. 36 (Opposition to Police Defendants' motion); ECF No. 37 (Opposition to Township Supervisor Defendants' motion)], and each set of Defendants has filed a Reply Brief [ECF No. 35 (Reply by Millcreek Township); ECF No. 38 (Reply by Police Defendants); ECF No. 39 (Reply by Township Supervisor Defendants)]. The motions are ripe for review.

---

[1] The parties consented to having a United States Magistrate Judge exercise jurisdiction over this matter. 28 U.S.C. § 636, et seq. ECF No. 8; ECF No. 21. On September 14, 2018, the undersigned was elevated to the position of United States District Judge and this case remained assigned to her.

[2] Defendants are represented by the same counsel. No issue of conflict of interest was raised by Plaintiff by the filing of separate motions. Nonetheless, the prudence of this strategy is questionable based on both the failed references to each of the other Defendants' motions and the incorporation attempts, as will be discussed later in this opinion.

1

This action is the fallout from the filing of four criminal charges against Ms. Eaton by the Police Defendants, charges which Erie County's District Attorney refused to pursue and quickly dismissed. Prior to the filing of the criminal charges, Plaintiff Laurie Eaton, the director of a non-profit social services organization, was publicly critical of the Township Supervisor Defendants about their decision to prematurely terminate a lease agreement between her organization and the Township. Ms. Eaton alleges that the Police Defendants, prompted by the Township Supervisor Defendants, filed criminal charges of theft of Township property and trespass in retaliation for her criticism.

**Standard of Review**

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he/she is entitled to judgment as a matter of law. Rule 12(b)(6) provides the standard of review applicable to motions for judgment on the pleadings: the court must accept the factual allegations as true and draw all reasonable inferences presented in the pleadings in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-4 (2007); Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234, quoting Bell Atlantic Corp v. Twombly, 550 U.S. 544, 556 n.3 (2007).

The Third Circuit has provided a roadmap for these determinations:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded

factual allegations, a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement for
relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

**Millcreek Township's Motion for Judgment on the Pleadings**

Defendant Millcreek Township brings its motion against allegations found in Count Four and Count Five of the Complaint.[3] ECF No. 25. Taking Count Five, entitled Abuse of Process & Malicious Prosecution, first, the Court finds that the complaint only brings these state law claims against the individual Defendants. See ECF No. 1, ¶ ¶ 92-93. To the extent that Defendant Millcreek seeks judgment in its favor as to Count Five, it will be granted.

Count Four, on the other hand, reads as a *Monell* claim against Millcreek Township. ECF No. 1, ¶ ¶ 68, 87-88. Under the seminal case of Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), a municipality or local governing body cannot be held liable under § 1983 for the constitutional torts of its employees by virtue of the doctrine of *respondeat superior*; however, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury … the government as an entity is responsible under § 1983." Id. at 694. The Third Circuit identifies three ways in which a municipality may be liable for the torts of its employees:

> **First**, the municipality will be liable if its employee acted pursuant to a formal
> government policy or a standard operating procedure long accepted within the
> government entity; **second**, liability will attach when the individual has policy

---

[3] Because the Complaint makes general allegations, which all Defendants complain "do not differentiate between the acts of individual Defendants," Defendant Millcreek Township "surmises" that the claims against it are found in Counts Four and Five. ECF No. 26, Brief in Support of Motion for Judgment on the Pleadings, p. 1. The Court takes the motion as it is brought, but when required must review the entire Complaint for any allegations that support its claims.

3

>making authority rendering his or her behavior an act of official government policy; **third**, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (emphasis added).

When a § 1983 claim is asserted against a municipality, the complaint must allege that the plaintiff's constitutional rights were violated by the execution of an official policy or custom of the municipality. Monell, 436 U.S. at 694. See also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). In order to state a facially plausible *Monell* claim, the plaintiff must allege: (1) a policy or custom that deprived the plaintiff of a federally protected right, (2) that the municipality, by its "deliberate conduct," acted as the "moving force" behind the alleged deprivation, and (3) "a direct causal link between the municipal action and the deprivation of federal rights." Brown, 520 U.S. at 404.

Millcreek Township argues that Ms. Eaton has failed to state a *Monell* claim because 1) she has not suffered a "deprivation of liberty consistent with the concept of a Fourth Amendment seizure" (ECF No. 26, pages 8-11); and 2) not only is Defendant Police Chief Tesore not a policy maker, no policy has been identified. Id. at pages 11-19. Despite these specific bases for the motion and despite the fact that Plaintiff does not list the constitutional amendments upon which her *Monell* claim against Millcreek Township is based (ECF No. 1, ¶¶ 87-90), the factual allegations throughout the complaint, taken as true and examined in the light most favorable to Plaintiff (see Erickson, 551 U.S. at 93-4), are sufficient to establish constitutional violations based on the First Amendment. See, e.g., ECF No. 1, ¶¶ 60-62.

Millcreek Township also argues that (1) Plaintiff has failed to identify a policy that caused the violation of her constitutional rights and (2) Chief Tesore is not a policy maker. For purposes of *Monell* liability, a policy is defined as a "statement, ordinance, regulation, or

decision officially adopted and promulgated by [a local governing] body's officers." Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) quoting Monell, 436 U.S. at 690).[4] Significantly, a municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy [or] custom" in the absence of a "conscious decision or deliberate indifference of some natural person." Id. at 1063. A policymaker is an official with "final unreviewable discretion to make a decision or take an action." Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990). Accordingly, "to state a *Monell* claim upon which relief may be granted, a complaint must include the identity of the municipality's final policymaker and factual allegations that 'link the alleged offending policies or customs to' that final policymaker." Verrecchia v. City of Philadelphia, 2017 WL 264388, at *6 (E.D. Pa. Jan. 19, 2017) quoting Rees v. Office of Children & Youth, 473 Fed.Appx. 139, 143 (3d Cir. 2012).

Ms. Eaton alleges that Chief Tesore, acting with or at the direction of the Supervisor Defendants, followed a course of action that represented an official policy of Millcreek Township "by directing that the criminal charges be filed against Plaintiff by the Defendants Bucko and Mitchell, authorizing the filing of the charges and/or agreeing to the subordinate Defendant officers' decision to engage in the filing of the charges." ECF No. 1, ¶ ¶ 69, 88. Moreover, Ms. Eaton alleges that "[e]ven though the Erie County District Attorney called the Defendant Tesore in order to arrange a meeting with the Township supervisors in an attempt to prevent the filing of criminal charges against the Plaintiff, Tesore failed to intervene and instead" directed his officers to accelerate the filing of the criminal charges. Id. at ¶ 70. Because "a single

---

[4] Meanwhile, a custom is defined as "an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) quoting Brown, 520 U.S. at 404. See also Roman v. City of Newark, ___ F.3d ___, ___, 2019 WL 348658, at *5 (3d Cir. Jan.29, 2019). This Court does not read the complaint as alleging a *Monell* claim based on custom.

5

decision by municipal policymakers" can result in liability for a municipality "under appropriate circumstances" (Mulholland v. Government Cty. of Berks, Pa., 706 F.3d 227, 242 (3d Cir. 2013) quoting McGreevy, 413 F.3d at 368), Ms. Eaton has satisfactorily identified a "policy" decision sufficient to withstand Millcreek Township's motion for judgment.

Finally, Millcreek Township argues that Tesore cannot be a policymaker because the Second Class Township Code governing Millcreek Township vests all policymaking authority in the Township Board of Supervisors, not the Police Chief. The Third Circuit has explained in a different context, the simple fact that a statute provides that a governmental entity is the final policymaker regarding some general responsibility does not mean that action by the governmental entity is a prerequisite for imposition of liability under *Monell*. See McGreevy, 413 F.3d at 368. Similarly, here, the fact that the Second Class Township Code provides that the Township is the final policymaker regarding "safety and welfare of [the Township's] citizens" and that the Township Supervisors are vested with "all of the policymaking power including over the local police force" does not mean that a formal action by the Board is a prerequisite for the imposition of liability on Millcreek Township. Ms. Eaton's allegations are sufficient to state a *Monell* claim and survive Defendant Millcreek Township's motion.

**Police Defendants' Motion for Judgment on the Pleadings**

The Police Defendants move for judgment on the pleadings as to Count One, Count Two, Count Three and part of Count Five. ECF No. 27. The first three counts are brought under 28 U.S.C. § 1983 for violations of Plaintiff's civil rights to be free of retaliatory prosecution, malicious prosecution and abuse of process, and Count Five alleges malicious prosecution and abuse of process as state law torts.

Beginning with Count One, Plaintiff alleges that Officers Bucko and Mitchell filed four criminal charges against her without probable cause. Plaintiff further alleges that Bucko and Mitchell acted under the "direction, supervision, and/or acquiescence" of Tesore, Figaski and Groh[5] in retaliation for Plaintiff's exercise of her First Amendment rights. ECF No. 1, ¶ ¶ 72-74.

"Official reprisal for protected speech 'offends the Constitution because it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006) quoting Crawford-El v. Britton, 523 U.S. 574, 588, 594, n.10 (1998). In order to state a claim of retaliation under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Turkos v. Dupont Borough, 721 F. App'x 208, 212 (3d Cir. 2018) quoting Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Additionally, if a retaliation claim is based on a criminal prosecution (in other words, retaliatory prosecution), a plaintiff must also allege the absence of probable cause for the underlying criminal charges. Id. citing Hartman, 547 U.S. at 265–66.

The Police Defendants contend that Plaintiff has failed to set forth sufficient factual allegations to support the absence of probable cause.[6] Because the probable cause determination

---

[5] Importantly, the Township Supervisor Defendants Figaski and Groh have not moved for judgment as to this claim. See ECF No. 31; ECF No. 32.

[6] Defendants have submitted the Criminal Complaint, the Affidavit of Probable Cause, the Bail Bond, and a Supplemental Police Report in support of this argument. ECF No. 28-1. The Court is permitted to consider, in addition to the allegations of the Complaint, "documents that are attached or submitted with the complaint, ... and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). However, this Court will not consider the evidence submitted by the Police Defendants at this

7

is a fact-specific inquiry (see Maryland v. Pringle, 540 U.S. 366, 371 (2003)), its existence or absence in a § 1983 action is generally a question for the trier of fact. Suydam v. Pennsylvania State Police, 2018 WL 347785, at *3–4 (M.D. Pa. Jan. 10, 2018). A review of the allegations of the Complaint in this regard highlights the factual nature of them, the dispute over them and their impropriety as a basis for a ruling on the pleadings. Crucial to the inquiry here, there are factual allegations that these were sham charges.

Plaintiff's allegations that the five individual defendants, acting together, caused Plaintiff to be criminally charged in retaliation and without probable cause paints a particular story with the following factual allegations: (1) the timing of when the JOY seniors were told to inventory items and by whom (ECF No. 1, ¶¶ 28, 29); (2) representations allegedly made to Plaintiff that if the missing items were returned, no criminal charges would be filed against anyone (id. at ¶ 30); (3) the missing items were returned a month before the criminal charges were filed (id. at ¶¶ 30, 40, 57); (4) the District Attorney's thwarted attempt to intervene before the criminal charges were filed (id. at ¶¶ 37, 38); and (5) the alleged multiple items of exculpatory evidence that were excluded from the probable cause affidavit (id. at ¶¶ 41-43, 47, 50, 52). While Plaintiff must ultimately prove every element of her claim at trial, her factual allegations relating to retaliatory prosecution, rife with factual disputes, are sufficient to withstand a motion for judgment on the pleadings. See Swope v. City of Pittsburgh, 90 F. Supp. 3d 400, 405 (W.D. Pa. 2014) citing Oatway v. Am. Int'l Grp., Inc., 325 F.3d 184, 187 (3d Cir. 2003) (The question is not whether the plaintiff will prevail in the end; rather, the question "is whether the plaintiff is entitled to offer evidence in support of his or her claims.").

---

juncture as some of it is beyond the scope of that referred to in the complaint and because Plaintiff challenges the Affidavit of Probable Cause not for what it contains, but for what it lacks.

As to Count Two, Plaintiff alleges that the five individual Defendants, including the Police Defendants, acted together to cause criminal proceedings to be initiated against her without probable cause and with malice or for an improper purpose. ECF No. 1, ¶¶ 77-81. See also ECF No. 36, page 8 (referring to Count Two as a malicious prosecution claim under § 1983). Using the common law of Pennsylvania as a guide,[7] in order to state a claim of malicious prosecution under § 1983, a plaintiff must allege at least: "[1] the defendant ... instituted proceedings against the plaintiff ... [2] without probable cause, ... [3] with malice, and ... [4] the proceedings must have terminated in favor of the plaintiff." Wagner v. N. Berks Reg'l Police Dep't, 2018 WL 3361070, at *2 (E.D. Pa. July 10, 2018) quoting Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249, 544 A.2d 940, 951 (Pa. 1988).

The Police Defendants argue that Ms. Eaton has not stated facts to satisfy a fifth element–i.e., that she suffered some deprivation of liberty as a consequence of the legal proceeding. The Court reads Ms. Eaton's malicious prosecution claim to be based on the First Amendment, not the Fourth Amendment. See generally, Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998) ("…[W]e do not read Albright [v. Oliver, 510 U.S. 266 (1994)] to hold that a malicious prosecution claim can only be based on a Fourth Amendment violation. Accordingly, a § 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process, or other explicit text of the Constitution."); Merkley v. Upper Dublin School District, 211 F.3d 782, 798 (3d Cir. 2000). Because of this, these civil rights claims survive scrutiny here.[8]

---

[7] The required elements of malicious prosecution as a civil rights claim are far from clear in this and other circuits. See Third Circuit Model Jury Instructions, 4.13 Section 1983 – Malicious Prosecution at www.ca3.uscourts.gov/model-civil-jury-table-contents-and-instructions.

[8] The Court does not read the Police Defendants' motion to include the part of Count Five relating to malicious prosecution as a tort. Nonetheless, because the elements of the §1983 claim of malicious prosecution are based on the state law claim, the same analysis and result apply.

At Count Three, Plaintiff alleges that the five individual Defendants used the criminal legal process against her in order "to accomplish a purpose for which it was not designed" thereby violating Plaintiff's constitutional rights to due process and in retaliation for the exercise of her First Amendment right to freedom of speech. ECF No. 1, ¶¶ 83-85. The Police Defendants and the Supervisor Defendants move for judgment as to the **state** law claim of abuse of process only. ECF No. 27; ECF No. 31. Because the "elements necessary to establish a claim for abuse of process … under Pennsylvania tort law and 42 U.S.C. § 1983 are the same" (Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 858 (E.D. Pa. 2000)), this Court will liberally construe their arguments as applying to both the federal and state law claims.

"[A] section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." Jenn-Ching Luo v. Owen J. Roberts Sch. Dist., 737 F. App'x 111, 116 (3d Cir. 2018), cert. denied 2019 WL 113156 (U.S. Jan. 7, 2019) quoting Rose v. Bartle, 871 F.2d 331, 350 n.17 (3d Cir. 1989). "The gravamen of [a malicious abuse of process claim] is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." Id. quoting Restatement (Second) of Torts § 682 cmt. a (1977). This important distinction is determinative.

Plaintiff has not alleged that the criminal process was initiated against her legitimately and then perverted to some other purpose; instead, Plaintiff alleges that criminal process was initiated against her for no legitimate purpose. This does not state a claim of abuse of process under either state or federal law and judgment will be entered in favor of all individual

Defendants, including the Police Defendants Tesore, Bucko and Mitchell, on the entirety of Count Three and the pertinent part of Count Five.

**Township Supervisor Defendants' Motion for Judgment on the Pleadings**

The Township Supervisor Defendants move for judgment on the pleadings as to Count Two, Count Three and part of Count Five. ECF No. 31. Having just discussed the substance of these counts and the reasons for granting judgment on the pleadings in favor of Defendants in Count Three and the pertinent part of Count Five, which determination includes these Township Supervisor Defendants, attention will be paid solely on the argument made by them in opposition to the allegations in Count Two.

There, the Supervisors rest on their argument that there are no allegations that they did anything to "initiate the criminal process" against Ms. Eaton (ECF No. 32, page 2-3). Despite this claim, Ms. Eaton's allegations that Figaski and Groh avoided communication with the District Attorney (who allegedly would have attempted to dissuade them from pursuing criminal charges against her) and directed the Police Defendants to accelerate the filing of the criminal charges before the District Attorney could intervene, ties them to the charges filed against Plaintiff. ECF No. 1, ¶ 38. It is precisely the dispute over the accuracy of these allegations that defeats judgment on the pleadings as to Count Two.

**Motion for Judgment on the Pleadings as to all Defendants - Conspiracy**

While there are a multitude of general averments throughout the complaint about the individual Defendants acting in concert, Ms. Eaton does not have a separate count labeled conspiracy, nor is she required to. Nonetheless, reading the allegations of conspiratorial acts as a

whole, as required under the law, it is understandable that some Defendants have moved for judgment on the pleadings on civil conspiracy because Plaintiff, in fact, alleges it.

Conspiracy claims under § 1983 differ slightly with those brought under state law because under state law a complainant must also prove malice. "In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federal protected right." Paterno v. Pennsylvania State University, 149 F.Supp.2d 530, 543-44 (E.D. Pa. 2016). Under Pennsylvania law, a plaintiff must demonstrate that an overt unlawful act was "done in pursuance of the common purpose" by a combination of two or more persons that must have caused "actual legal damage." Montgomery Cnty., Pa. v. MERSCORP, Inc., 904 F.Supp.2d 436, 453 (E.D.Pa.2012) citing Commw. v. TAP Pharm. Prods., Inc., 36 A.3d 1112, 1144 (Pa.Commw.Ct.2011). Additionally, proof of malice is an essential part of a cause of action for civil conspiracy in Pennsylvania and requires that "the conspirators took unlawful actions with the specific intent to injure the plaintiff ...." Id., citing TAP Pharm., 36 A.3d at 1185. Finally, in Pennsylvania civil conspiracy is not a separate cause of action but instead requires an underlying tort. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405–06 (3d Cir.2000), abrogated on other grounds as recognized in, United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA, 316 F.3d 392 (3d Cir.2003).

Under both the federal and state standards, the Complaint contains sufficient allegations that the individual Defendants worked in concert to deprive Plaintiff of her Constitutional right to free speech and that they took the steps to prepare and file charges against her that were a sham, as supported by the District Attorney refusing to pursue them. The factual allegations in the Complaint tell a story of retaliation with specific intent to harm Plaintiff, and for state law purposes, in furtherance of the underlying tort of malicious prosecution. Although the Complaint

is not the model of clarity on these charges, a separate count is not needed to find sufficient factual averments to satisfy Plaintiff's claims of conspiratorial conduct among the individual

**Qualified Immunity as to the Individual Defendants[9]**

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "When properly applied" by the courts, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Taylor v. Barkes, ___ U.S. ___, 135 S.Ct. 2042, 2044 (2015) quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 278 F.3d 271, 277 (3d Cir.2002). It is a defendant's burden to establish that he or she is entitled to qualified immunity. See Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014) citing Harlow, 457 U.S. at 812.

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 201 (2001). Qualified immunity involves two inquiries: 1) do the facts alleged show that a state actor violated a constitutional right? and 2) was that constitutional right clearly established so that a reasonable person would know that their conduct was unlawful? Id. Courts are accorded discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at

---

[9] Defendant Millcreek Township cannot enjoy qualified immunity under the law as qualified immunity insulates only individuals from liability.

hand." Pearson v. Callahan, 555 U.S 223, 236 (2009). The order is of no matter as both questions may be answered in the affirmative at this stage from the allegations of the Complaint.

As discussed above, the facts as alleged are sufficient to show that all five of the individual Defendants violated Ms. Eaton's First Amendment right to free speech. As to the second prong, a First Amendment right to be free from retaliatory speech is long established. Hartman, 547 U.S. 250; Crawford-El, 523 U.S. 574; Perry v. Sindermann, 408 U.S. 593, 597 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech"). All individual Defendants should have known that their alleged conduct was unlawful. Defendants are free to continue to pursue qualified immunity after discovery is completed in a dispositive motion, if the facts warrant, or take the facts to a jury at trial. Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 210 n.3 (3d Cir. 2001) ("Qualified immunity may be raised in a motion to dismiss at the pleading stage, in a motion for summary judgment after discovery, or as an affirmative defense at trial."); Foster v. City of Philadelphia, 2014 WL 5821278, at *22 (E.D. Pa. 2014).

An appropriate Order follows.