IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA J. EATON, | ) | |
|     Plaintiff, | ) | C.A. No. 1:16-CV-279 |
| | ) | |
| v. | ) | |
| | ) | RE: ECF No. 127 |
| RICHARD FIGASKI, et al, | ) | Motion for summary judgment |
|     Defendants. | ) | |

## MEMORANDUM OPINION

U.S. D.J. Susan Paradise Baxter

**RELEVANT PROCEDURAL HISTORY**

Plaintiff originally brought this action against Millcreek Township, Township Supervisors Richard Figaski and John Groh, Police Chief Michael Tesore, and Police Officer Corporal Robert Bucko.[1] The legal claims in this action arise out of the filing of four criminal charges against Ms. Eaton, all of which were later dismissed by the District Attorney of Erie County. Prior to the filing of the criminal charges, Plaintiff Laura Eaton, the director of a non-profit social services organization, repeatedly publicly criticized and complained to Township Supervisors Figaski and Groh about their decision to prematurely terminate a lease agreement between her organization and the Township. Ms. Eaton alleges that the filing of the criminal charges was in retaliation for her vocal criticism of the Millcreek Township Supervisors.

This Court previously construed the allegations of the complaint as advancing legal claims of retaliatory prosecution, malicious prosecution, and abuse of power under § 1983, as

---

[1] Sergeant Lesley Mitchell was originally named as a Defendant to this action, but the claims against Sergeant Mitchell have since been dismissed.

1

well as state law claims of abuse of process and malicious prosecution against the five individual Defendants. Additionally, there is a *Monell* claim against Millcreek Township for allowing its police officers to violate the constitutional rights of its citizens.

Motions for judgment on the pleadings were granted in part and denied in part. *See* ECF No. 106. Judgment was granted in favor of the individual Defendants on the federal and state abuse of process claims. This Court also opined that:

> While there are a multitude of general averments throughout the complaint about the individual Defendants acting in concert, this Court does not read the complaint as attempting to allege a conspiracy claim under either federal or state law. … Because a conspiracy claim may be appropriate here and such is not clearly futile, Ms. Eaton will be given the opportunity to amend the complaint in this regard in order to pursue a civil conspiracy claim under federal and/or state law. See F.R.C.P. 8.

*Id*. Plaintiff did not file an amended complaint.

So then, the following claims remain:

Count I – a § 1983 based on retaliatory prosecution;

Count II – a § 1983 claim based on malicious prosecution;

Count IV – a § 1983 *Monell* claim against Millcreek Township; and

Count V – a state law claim of malicious prosecution.

Defendants Bucko, Figaski, Groh, Millcreek Township, and Tesore move for summary judgment on multiple bases. ECF No. 127. Plaintiff has filed an opposition brief [ECF No. 135] and Defendants have filed a reply brief [ECF No. 140].

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, *quoting* Fed. R. Civ. P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Id*. at 330; *see also Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metro. Life Ins. Co.,* 391 F.3d 497, 502 (3d Cir. 2004). After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. *Id.* at 324.

**RECITATION OF MATERIAL FACTS[2]**

In 2013, Millcreek Township, through its Board of Supervisors, entered into a written agreement with MECA, Inc. (MECA) for MECA to operate a senior program initiative named the JOY Center for Seniors. ECF No. 139, ¶ 1. Plaintiff Laura Eaton was the executive director of MECA and signed the agreement on its behalf. *Id*. at ¶ 2.

---

[2] Plaintiff's Opposition to Concise Statement raises new Concise Statements. Under the Local Rules, as well as the undersigned's Practices and Procedures, any new material fact raised in the Responsive Concise Statement must be addressed by the opposing party. Defendants have not responded to the new Concise Statements (¶ ¶ 112-166) as required by Local Rule 56.

3

The Agreement specified that the JOY Center would operate out of real estate being leased by Millcreek Township located at 2711 Legion Road and that MECA would have use of six offices within the premises for MECA's own operations. *Id*. at ¶ 3. The Agreement also specified certain items of tangible personal property that belonged to and would be supplied by MECA for the operation of the JOY Center, and certain items of property that belonged to and would be supplied by Millcreek Township for the operation of the JOY Center. *Id*. at ¶ 5.

The terms of the Agreement provided that Millcreek Township had the right to terminate the Agreement with MECA, without cause, upon giving 90 days' notice. *Id*. at ¶ 8. On May 28, 2014, the Millcreek Supervisors notified MECA by letter of Millcreek Township's invocation of the termination clause. *Id*. at ¶ 9. The JOY Center ceased operations and closed its doors on August 27, 2014. *Id*. at ¶ 11. MECA exercised an option to remain in possession of its office space on the premises for an additional year. *Id*. at ¶ 12.

By letter dated September 4, 2014, Millcreek Township inquired into some items of property that were missing from the JOY Center premises following JOY's eviction from the property. *Id*. at ¶ 16. On September 12th, Gery Nietupski, MECA's attorney, responded to Millcreek Township's letter, representing that the JOY Center was in the process of making an inventory of property and would return any items owned by Millcreek Township. *Id*. at ¶ 17.

On September 18th, Township Supervisor Figaski spoke with Ms. Eaton by telephone about the missing property. *Id*. at ¶ 21. Ms. Eaton had the phone call on speakerphone with a number of senior citizens who were involved in the JOY Center in the room, including Dolores Hartle. *Id*. at ¶ 22. That same day, there were public demonstrations protesting the closing of the JOY Center and harassment by Mr. Figaski. *Id*. at ¶ 27. Ms. Hartle went to the Millcreek

Township Police Department to file a harassment complaint about Figaski's pursuit of the missing property. *Id*. at ¶ 28.

Following the events of September 18th, Millcreek Township reported the missing property to the police. *Id*. at ¶ 34. Police Officers Bucko and Mitchell handled the investigation. *Id*. at ¶ 36. On September 22nd, Bucko and Mitchell spoke with Plaintiff. They explained their investigation to her. Ms. Eaton stated that she did not know anything about the theft and that the seniors moved everything, and stated she was in the MECA offices (not adjacent to JOY Center space) during the move-out. She said she did not know anything about the items in dispute, other than that she bought some of the televisions on her credit card, they belonged to MECA, and she would provide receipts. She said she wanted her attorney, Gery Nietupski, present for any further questions and the officers then left her office. *Id*. at ¶ 48.

JOY Center advisory board member Judith Pennsy made a Right to Know Request to Millcreek Township regarding information about the missing property identified in the letter to Attorney Nietupski. Following this request, Officers Bucko and Mitchell went to Ms. Pennsy's house to speak with her. Ms. Pennsy told the officers that she did not want to speak with them without her attorney, Gery Nietupski, present. The officers left Ms. Pennsy's home. *Id*. at ¶ 53.

In late September or early October 2014, Attorney Nietupski met with Detective Bucko to review a list of purported missing property. *Id*. at ¶ 40.

On October 20th, Sgt. Mitchell received information that the missing property items had been returned to the former JOY Center premises. *Id*. at ¶ 66. In the next two days, Officers Bucko and Mitchell attempted to obtain security footage from nearby businesses from the time frame when the items were returned to 2711 Legion Road, but they were unable to obtain any footage. *Id*. at ¶ 76.

In early November, Officer Bucko reached out to Plaintiff's criminal attorney, Patricia Ambrose, to inform her that criminal charges would be filed against Ms. Eaton, and to coordinate a mutually agreeable time for an arraignment. *Id*. at ¶ 84. On November 11th, Cpl. Bucko emailed Attorney Ambrose an advance copy of the Affidavit of Probable Cause and Criminal Complaint before it was filed. This copy contained information from Cpl. Bucko's supplemental report that was later removed from the final version. *Id*. at ¶ 86.

Around November 19th, the Criminal Complaint and Affidavit of Probable Cause were formally filed by Officers Bucko and Mitchell. *Id*. at ¶¶ 80, 87. The Criminal Complaint charged Ms. Eaton with two counts of Criminal Trespass, and one count each of Theft by Unlawful Taking and Receiving Stolen Property. *See* ECF No. 137-7, page 2. The Complaint indicates the following as to the two counts of Criminal Trespass:

> A person commits an offense if, knowing that he is not licensed or privileged to do so, he breaks into any building or occupied structure or separately secured or occupied portion thereof, to wit, the Defendant, Laura Eaton, did enter the Millcreek Township JOY Center located [at] 2711 Legion Road which she is not authorized to do as of 8-27-2014. Eaton was observed in the Center on 9-9-2014 by Millcreek Township Supervisor Rick Figaski and then entered the Center again over the weekend of October 18-19th when the items were returned to the Center without the knowledge or permission of Millcreek Township.

*Id*.

As to the charge of Theft by Unlawful Taking, the Complaint states:

> A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with the intent to deprive him thereof, to wit, the above Defendant, Laura Eaton, did exercise control over property contained within the Millcreek Township JOY Center which was known property of Millcreek Township. She exercised control over the property by directing the movers of what items to load and remove from the Center. The items taken included folding chairs, tables, leather couch and loveseat, end tables, projector screen, amplifier with mic and speakers. The total value of the property removed which belonged to Millcreek Township was approx. $6,037.80.

*Id*.

> Finally, as to the charge of Receiving Stolen Property, the Complaint details:
>
>> A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with the intent to return it to the owner, to wit, the Defendant, Laura Eaton, did arrange the movement of items belonging to Millcreek Township from the Millcreek Township JOY Center located at 2711 Legion Road to an unknown location for storage of the items. The items included the items listed above valued at approx. $6,037.80.

*Id*.

District Attorney Jack Daneri first reviewed the Criminal Complaint and Affidavit of Probable Cause after it was filed. ECF No. 139, ¶ 93. District Attorney Daneri first became aware of the criminal matter when he was contacted by a newspaper reporter about it, after it was entered into the online docketing system. *Id*. at ¶ 97. Approximately a week in time passed between the time that District Attorney Daneri first learned about the criminal charges and the date that he submitted his formal withdrawal of the criminal charges. *Id*. at ¶ 100.

In his deposition testimony, District Attorney Daneri explained that in his conversations with Chief Tesore and the Supervisors, he was not demanding that the charges should not be filed, rather it was his opinion that he did not think they should be filed. *Id*. at ¶ 103.

In his deposition, Daneri further explained:

> That Probable Cause Affidavit as spelled out, if all of those things are true, it is sufficient to charge the crimes that were charged. […] I didn't withdraw the complaint because I didn't believe there was sufficient information in the Affidavit of Probable Cause, or that what was in the probable cause wasn't truthful. I withdrew the Complaint because I saw it primarily as a property issue. And with the property being returned after individuals were instructed to return it without consequence, I saw those two things as major hurdles in getting a conviction in a criminal prosecution. […]
>
> I thought as it was going to play out in court, in trial, it would come --- it would appear to be an argument between senior citizens and Millcreek Township about who owned tables and chairs and television sets. And I didn't think that I would be able to get a conviction, along with the other facts, in this case.

7

ECF No. 137-13, page 15. When questioned as to what other factors, Daneri explained:

> That as part of the case it appeared that there were, whether you want to call them promises, assurances or words spoken to the effect that if property was returned charges wouldn't be filed. And one month after the property was returned the charges were filed.

*Id.*

Around November 26th, District Attorney Daneri formally withdrew the charges against Ms. Eaton pursuant to Rule 551 of the Pennsylvania Rules of Criminal Procedure. ECF No. 139, ¶ 111.

**ANALYSIS AND DISCUSSION**

**The Absence of Probable Cause**

The individual Defendants argue that they are entitled to summary judgment because all claims are defeated by the existence of probable cause for Ms. Eaton's arrest.

Each of the remaining claims, of retaliatory prosecution and malicious prosecution under both federal and state law, has the lack of probable cause as an element.[3] Ms. Eaton must demonstrate that there was a lack of probable cause in order to establish any legal claim against the Defendants. And, conversely, if probable cause exists, Ms. Eaton's claims fail.

The existence or absence of probable cause generally turns on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Due to "its fact-specific nature,

---

[3] *Dreibelbis v. Clark*, 813 Fed. App'x 64, 68 (3d Cir. May 6, 2020) *citing Miller v. Mitchell*, 598 F.3d 139, 154-55 (3d Cir. 2010) (if a First Amendment retaliation claim is based on a criminal prosecution (in other words, retaliatory prosecution), "the plaintiff must allege and prove lack of probable cause as an element of causation."); *Townsend v. City of Chester*, 2020 WL 4347368, at *6 (E.D. Pa. July 29, 2020) *quoting Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) ("The elements of a malicious prosecution claim are: […] defendant "initiated the proceeding without probable cause …").

the existence or absence of probable cause is ordinarily a question of fact appropriate for resolution by a jury." *Dixon v. Schweizer*, 2020 WL 4600187, at *6 (E.D. Pa. Aug. 11, 2020) *quoting Adams v. Springmeyer*, 17 F. Supp. 3d 478, 495 (W.D. Pa. 2014). *See also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("the probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."). Nonetheless, "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to the Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Dixon,* 2020 WL 4600187 at *6, *quoting Brantley v. Burrows*, 2015 WL 13620413, at *3 (E.D. Pa. Nov. 19, 2015). *See also Montecalvo v. North Franklin Township,* 2019 WL 2579973, at *7 (W.D. Pa. 2019); *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).

Probable cause need only exist as to any offense that could be charged under the factual circumstances. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) *citing Edwards v. City of Philadelphia*, 860 F.2d 568, 575-76 (3d Cir. 1988). Probable cause "exists if there is a fair probability that the person committed the crime" (*Montecalvo*, 2019 WL 2579973, at *7, *quoting Dempsey v. Bucknell Univ.*, 824 F.3d 457, 467 (3d Cir. 2016)) and "does not require that officers currently resolve conflicting evidence or that their determinations of credibility … were, in retrospect, accurate." *Id. quoting Wright v. City of Phila.,* 409 F.3d 595, 603 (3d Cir. 2005). Here, there was probable cause to charge Ms. Eaton with an offense.

According to Defendants' version of events, there are several facts that support the existence of probable cause for Ms. Eaton's arrest.[4] Many of these factual statements upon which Defendants base their argument are disputed by Plaintiff. However, after setting aside those facts as to which there is a genuine factual dispute, the Court is left with the following undisputed facts:

- As a signatory to the Agreement with Millcreek Township, Ms. Eaton knew what property belonged to Millcreek Township because the Agreement explicitly identified it as such. ECF No. 129, at ¶¶ 1-2, 5-7

- Ms. Eaton had access to the premises, because she had keys to the building. *Id*. at ¶¶ 4

- During the police investigation, Plaintiff was identified by a witness as the person who made arrangements for the removal of the missing property. *Id*. at ¶¶ 54-57.

- Only several weeks later did the missing property reappear in the former JOY Center space; a location that Plaintiff continued to have ability to access, and a neighbor having witnessed a van and people returning items into that location late at night over a weekend. *Id*. at ¶¶ 66-74

These uncontested facts provide enough circumstantial evidence to support the existence of probable cause to charge Ms. Eaton with, at the least, one count of Criminal Trespass which is defined under Pennsylvania law as one who knowing that she is not licensed or privileged to do so enters or surreptitiously remains in any building or occupied structure. *See* 18 Pa. C.S. § 3503(a)(1).

In her opposition, Ms. Eaton argues that the final affidavit of probable cause excludes exculpatory evidence known to the police officers and that fact should defeat summary

---

[4] Defendants specifically point to the following: ECF No. 129, at ¶¶ 19-21, 23-26, 38, 49-51, 75, 77, 94-95, 102, 107, and 110. The Court does not take those Concise Statements into account as they are contested by Plaintiff.

judgment. Specifically, she points to a draft affidavit of probable cause that contains some exculpatory evidence and that differs from the final affidavit filed. Despite her arguments, this is insufficient to defeat summary judgment. Although the factual record before the Court demonstrates that exculpatory evidence was excluded from the final affidavit, conflicts in evidence do not undermine an initial finding of probable cause. *Montecalvo*, 2019 WL 2579973, at *7, *citing Wright*, 409 F.3d at 603.

Summary judgment will be granted in favor of the individual Defendants on these claims.

### The *Monell* Claim

Ms. Eaton's *Monell* claim against Millcreek Township fails because it is derivative in nature. As discussed above, there is no underlying constitutional violation by an agent of Millcreek Township. Accordingly, without such a violation, Millcreek Township cannot be liable. *See Mills v. City of Harrisburg*, 350 Fed App'x 770, 773 n.2 (3d Cir. 2009) ("Absent an underlying constitutional violation by an agent of the municipality, [...] the municipality itself may not be held liable under § 1983"); *Kelly v. O'Malley*, 328 F.Supp.3d 447, 462 (W.D. Pa. 2018) ("Since the Court has found no underlying violation of rights under Section 1983 …, the *Monell* claim fails on that basis."), *aff'd in part, vacated in part and remanded on other grounds*, 787 Fed. App'x 102 (3d Cir. 2019); *Jackson v. City of Pittsburgh,* 2011 WL 3443951, at *27 (W.D. Pa. 2011), *aff'd sub nom. Jackson v. City of Pittsburgh Pa.*, 492 Fed. App'x 297 (3d Cir. 2012) ("It is well-established that Plaintiff's § 1983 claim against the City of Pittsburgh under *Monell* is 'derivative' in nature").

Summary judgment will be granted in favor of Millcreek Township.

An appropriate order follows.