IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURA J. EATON,<br>　　　Plaintiff, | )<br>)　C.A. No. 1:16-CV-279<br>)<br>) |
| v. | ) |
| RICHARD FIGASKI, et al,<br>　　　Defendants. | )<br>)　RE: Motion for summary judgment<br>)　　　ECF No. 127 |

# AMENDED
# MEMORANDUM OPINION

U.S. D.J. Susan Paradise Baxter

## I.　RELEVANT PROCEDURAL HISTORY

Plaintiff originally brought this action against Millcreek Township, Township Supervisors Richard Figaski and John Groh, Police Chief Michael Tesore, and Police Officer Corporal Robert Bucko.[1] The legal claims in this action arise out of the filing of four criminal charges against Ms. Eaton, all of which were later dismissed by the District Attorney of Erie County. Prior to the filing of the criminal charges, Plaintiff Laura Eaton, the director of a non-profit social services organization, repeatedly publicly criticized and complained to Township Supervisors Figaski and Groh about their decision to prematurely terminate a lease agreement between her organization and the Township. Ms. Eaton alleges that the filing of the criminal charges was in retaliation for her vocal criticism of the Millcreek Township Supervisors.

---

[1] Sergeant Lesley Mitchell was originally named as a Defendant to this action, but the claims against Sergeant Mitchell have since been dismissed.

1

This Court previously construed the allegations of the complaint as advancing legal claims of retaliatory prosecution, malicious prosecution, and abuse of power under § 1983, as well as state law claims of abuse of process and malicious prosecution against the five Defendants. Additionally, there is a *Monell* claim against Millcreek Township for allowing its police officers to violate the constitutional rights of its citizens.

Motions for judgment on the pleadings were granted in part and denied in part. *See* ECF No. 106. Judgment was granted in favor of the individual Defendants on the federal and state abuse of process claims. This Court also opined that "although the complaint is not the model of clarity on these charges, a separate count [of conspiracy] is not needed to find sufficient factual averments to satisfy Plaintiff's claims of conspiratorial conduct among the individual [Defendants][2]." ECF No. 105, page 13.

So then, the following claims remain against the individual Defendants: retaliatory prosecution and malicious prosecution claims pursuant to 28 U.S.C. §1983, a malicious prosecution claim under state law, as well as a general conspiracy claim. Additionally, Plaintiff brings a *Monell* claim against Millcreek Township.

Defendants Bucko, Figaski, Groh, Millcreek Township, and Tesore move for summary judgment on multiple bases. ECF No. 127. Plaintiff filed an opposition brief [ECF No. 135] and Defendants filed a reply brief [ECF No. 140][3].

---

[2] The word "Defendants" was unintentionally omitted from the Memorandum Opinion. ECF No. 105, page 13.

[3] This Court filed a Memorandum Opinion and Order granting summary judgment in favor of Defendants. *See* ECF No. 143, 144. Following a motion for reconsideration, that Opinion and Order were vacated by the undersigned and this Court resolved to re-examine Defendants' motion for summary judgment. ECF No. 151.

The parties further supplemented their arguments. *See* ECF Nos. 147, 149, and 150. Plaintiff's counsel requested oral argument on the motion for summary judgment. Such request was granted and due to the ongoing coronavirus pandemic, oral argument was held via Zoom.

**II.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, *quoting* Fed. R. Civ. P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Id.* at 330; *see also Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. *Id.* at 324. A dispute is genuine for purposes of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Louis-El v. Ebbert*, 448 F.Supp.3d 428, 435 (M.D. Pa. 2020) *citing Anderson*, 477 U.S. at 250.

### III. RECITATION OF MATERIAL FACTS[4]

In 2013, Millcreek Township, through its Board of Supervisors, entered into a written agreement with MECA, Inc. (MECA) for MECA to operate a senior program initiative called the JOY Center for Seniors. ECF No. 139, Plaintiff's Responsive Concise Statements, ¶ 1. Plaintiff Laura Eaton was the executive director of MECA and signed the agreement on its behalf. *Id.* at ¶ 2.

The Agreement specified that the JOY Center would operate out of real estate being leased by Millcreek Township from the U.S. Postal Service and located at 2711 Legion Road. *Id.* at ¶ 3. Additionally, MECA would have use of six offices within the premises for MECA's own operations. *Id.* The Agreement does not describe the portion of the premises that would be used by the JOY Center, but it does describe the six MECA offices as "approximately 9' x 15' in area and located immediately east of the JOY Center premises." ECF No. 130-1, page 19. The Agreement also specified certain items of tangible personal property that belonged to and would be supplied by MECA for the operation of the JOY Center, and certain items of property that belonged to and would be supplied by Millcreek Township for the operation of the JOY Center. ECF No. 139 at ¶ 5.

---

[4] Plaintiff's Opposition to Concise Statement raises new Concise Statements. Under the Local Rules, as well as the undersigned's Practices and Procedures, any new material fact raised in the Responsive Concise Statement must be addressed by the opposing party. Defendants did not timely respond to the new Concise Statements (¶ ¶ 112-166) as required by Local Rule 56 and accordingly, these unopposed statements are deemed admitted. New Responsive Statements were filed by Defendants' counsel on November 18, 2020 [ECF No. 153]. These should have been filed with the Reply brief. Because the New Responsive Statements were filed late and were filed without leave of court, they will not be considered by this Court.

The terms of the Agreement provided that Millcreek Township had the right to terminate the Agreement with MECA, without cause, upon giving 90 days' notice. *Id.* at ¶ 8. On May 28, 2014, the Millcreek Supervisors notified MECA by letter of Millcreek Township's invocation of the termination clause. *Id.* at ¶ 9. The JOY Center ceased operations on August 27, 2014. *Id.* at ¶ 11. MECA exercised an option to remain in possession of its office space on the premises for an additional year. *Id.* at ¶ 12. The parties disagree whether Plaintiff was permitted to continue to access the portion of the building where the JOY Center had been housed. *Id.* at ¶¶ 12, 20. At oral argument, Plaintiff's counsel pointed out that the MECA offices were adjacent to the former JOY Center. *See* Transcript.

By letter dated September 4, 2014, Millcreek Township inquired into some items of property that were missing from the JOY Center premises following JOY's eviction from the property. ECF No. 139, at ¶ 16. On September 12th, Gery Nietupski, MECA's attorney, responded to Millcreek Township's letter, representing that the JOY Center was in the process of making an inventory of property and would return any items owned by Millcreek Township. *Id.* at ¶ 17.

On September 18th, Township Supervisor Figaski spoke with Ms. Eaton by telephone about the missing property. *Id.* at ¶ 21. Ms. Eaton had the phone call on speakerphone with a number of senior citizens who were involved in the JOY Center in the room, including Dolores Hartle. *Id.* at ¶ 22. That same day, there were public demonstrations protesting the closing of the JOY Center and harassment by Mr. Figaski. *Id.* at ¶ 27. Ms. Hartle went to the Millcreek Township Police Department to file a harassment complaint about Figaski's pursuit of the missing property. *Id.* at ¶ 28.

Following the events of September 18th, Millcreek Township reported the missing property to the police. *Id.* at ¶ 34. Police Officers Bucko and Mitchell handled the investigation. *Id.* at ¶ 36. On September 22nd, Bucko and Mitchell spoke with Plaintiff. They explained their investigation to her. Ms. Eaton stated that she did not know anything about the theft and that the seniors moved everything, and stated she was in the MECA offices (not adjacent to JOY Center space) during the move-out. She said she did not know anything about the items in dispute, other than that she bought some of the televisions on her credit card, they belonged to MECA, and she would provide receipts. She said she wanted her attorney, Gery Nietupski, present for any further questions and the officers then left her office. *Id.* at ¶ 48.

JOY Center advisory board member Judith Pennsy made a Right to Know Request to Millcreek Township regarding information about the missing property identified in the letter to Attorney Nietupski. Following this request, Officers Bucko and Mitchell went to Ms. Pennsy's house to speak with her. Ms. Pennsy told the officers that she did not want to speak with them without her attorney, Gery Nietupski, present. The officers left Ms. Pennsy's home. *Id.* at ¶ 53.

In late September or early October 2014, Attorney Nietupski met with Detective Bucko to review a list of purported missing property. *Id.* at ¶ 40.

On October 20th, Sgt. Mitchell received information that the missing property items had been returned to the former JOY Center premises. *Id.* at ¶ 66. Officers Bucko and Mitchell attempted to obtain security footage from nearby businesses from the time frame when the items were returned to 2711 Legion Road, but they were unable to obtain any footage. *Id.* at ¶ 76.

In early November, Officer Bucko reached out to Plaintiff's criminal attorney, Patricia Ambrose, to inform her that criminal charges would be filed against Ms. Eaton, and to coordinate a mutually agreeable time for an arraignment. *Id.* at ¶ 84. On November 11th, Cpl. Bucko emailed

6

Attorney Ambrose an advance copy of the Affidavit of Probable Cause and Criminal Complaint before it was filed. This copy contained information from Cpl. Bucko's supplemental report that was later removed from the final version. *Id.* at ¶ 86.

Around November 19th, the Criminal Complaint and Affidavit of Probable Cause were formally filed by Officers Bucko and Mitchell.[5] *Id.* at ¶ ¶ 80, 87. The Criminal Complaint charged Ms. Eaton with two counts of Criminal Trespass, and one count each of Theft by Unlawful Taking and Receiving Stolen Property. *See* ECF No. 137-7, page 2. The Complaint indicates the following as to the two counts of Criminal Trespass (18 Pa.C.S. §3503(a)(1)(ii)):

> A person commits an offense if, knowing that he is not licensed or privileged to do so, he breaks into any building or occupied structure or separately secured or occupied portion thereof, to wit, the Defendant, Laura Eaton, did enter the Millcreek Township JOY Center located [at] 2711 Legion Road which she is not authorized to do as of 8-27-2014. Eaton was observed in the Center on 9-9-2014 by Millcreek Township Supervisor Rick Figaski and then entered the Center again over the weekend of October 18-19th when the items were returned to the Center without the knowledge or permission of Millcreek Township.

---

[5] The parties disagree as to whether District Attorney Daneri spoke to Supervisors Groh and Figaski before the charges were filed. Plaintiff cites Daneri's sworn deposition that he spoke to both Supervisors, as well as Chief Tesore, urging them not to file criminal charges against Ms. Eaton. DA Daneri testified that he spoke with Chief Tesore and with Supervisors Figaski and Groh <u>before</u> the charges were filed urging them not to pursue criminal charges against Ms. Eaton. ECF No. 137-13, pages 2, 8-11, and 13. Besides speaking with each of the Supervisors by telephone, DA Daneri offered to meet with each of them at their offices to "explain [his reasoning] in further detail." *Id.* at pages 9, 11. Both declined the offer. *Id.* Meanwhile, Defendants point to the depositions of Groh and Figaski who testified that they did not speak to the District Attorney prior to the filing of the criminal charges. ECF No. 137-2 (Groh Deposition), page 11; ECF No. 137-5 (Figaski Deposition), pages 15-16. While this disagreement represents a noteworthy factual dispute, such a dispute is not material to resolution of Plaintiff's civil rights claims. Whether District Attorney Daneri spoke to any of the police does not change the probable cause analysis. *See infra*, XXX. *See also Louis-El v. Ebbert*, 448 F.Supp.3d 428, 435 (M.D. Pa. 2020) *citing Anderson*, 477 U.S. at 248 (A disputed fact is **material** for purposes of summary judgment when it could affect the outcome of the suit under the governing substantive law).

7

*Id.*

As to the charge of Theft by Unlawful Taking (18 Pa.C.S. §3921(a)), the Complaint states:

> A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with the intent to deprive him thereof, to wit, the above Defendant, Laura Eaton, did exercise control over property contained within the Millcreek Township JOY Center which was known property of Millcreek Township. She exercised control over the property by directing the movers of what items to load and remove from the Center. The items taken included folding chairs, tables, leather couch and loveseat, end tables, projector screen, amplifier with mic and speakers. The total value of the property removed which belonged to Millcreek Township was approx. $6,037.80.

*Id.*

Finally, as to the charge of Receiving Stolen Property (18 Pa.C.S. § 3925(a)), the Criminal Complaint details:

> A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with the intent to return it to the owner, to wit, the Defendant, Laura Eaton, did arrange the movement of items belonging to Millcreek Township from the Millcreek Township JOY Center located at 2711 Legion Road to an unknown location for storage of the items. The items included the items listed above valued at approx. $6,037.80.

*Id.*

District Attorney Jack Daneri first reviewed the Criminal Complaint and Affidavit of Probable Cause after it was filed. ECF No. 139, ¶ 93. District Attorney Daneri became aware of the formal filing of the criminal charges only when he was contacted by a newspaper reporter about it, after it was entered into the online docketing system. *Id.* at ¶ 97. Approximately a week in time passed between the time that District Attorney Daneri first learned about the filing of the criminal charges and the date that he submitted his formal withdrawal of the criminal charges. *Id.* at ¶ 100.

In his deposition testimony, District Attorney Daneri explained that in his conversations with Chief Tesore and the Supervisors, he was not demanding that the charges should not be filed, rather it was his opinion that he did not think they should be filed. *Id.* at ¶ 103. In his deposition, Daneri further explained:

> That Probable Cause Affidavit as spelled out, if all of those things are true, it is sufficient to charge the crimes that were charged. […] I didn't withdraw the complaint because I didn't believe there was sufficient information in the Affidavit of Probable Cause, or that what was in the probable cause wasn't truthful. I withdrew the Complaint because I saw it primarily as a property issue. And with the property being returned after individuals were instructed to return it without consequence, I saw those two things as major hurdles in getting a conviction in a criminal prosecution. […]
>
> I thought as it was going to play out in court, in trial, it would come --- it would appear to be an argument between senior citizens and Millcreek Township about who owned tables and chairs and television sets. And I didn't think that I would be able to get a conviction, along with the other factors, in this case.

ECF No. 137-13, page 15. When asked to identify those other factors, Daneri explained:

> That as part of the case it appeared that there were, whether you want to call them promises, assurances or words spoken to the effect that if property was returned charges wouldn't be filed. And one month after the property was returned the charges were filed.

*Id.*

Around November 26th, District Attorney Daneri formally withdrew the charges against Ms. Eaton pursuant to Rule 551 of the Pennsylvania Rules of Criminal Procedure. ECF No. 139, ¶ 111.

## IV. ANALYSIS AND DISCUSSION

### A. The Absence of Probable Cause

The individual Defendants argue that they are entitled to summary judgment because all claims are defeated by the existence of probable cause for Ms. Eaton's arrest.

9

The lack of probable cause is an element of each of the remaining claims of retaliatory prosecution and malicious prosecution under both federal and state law.[6] Ms. Eaton must demonstrate that there was a lack of probable cause in order to establish any legal claim against the Defendants. And, conversely, if probable cause exists, Ms. Eaton's claims fail.

The existence or absence of probable cause generally turns on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Due to "its fact-specific nature, the existence or absence of probable cause is ordinarily a question of fact appropriate for resolution by a jury." *Dixon v. Schweizer*, 2020 WL 4600187, at *6 (E.D. Pa. Aug. 11, 2020) *quoting Adams v. Springmeyer*, 17 F. Supp. 3d 478, 495 (W.D. Pa. 2014). *See also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("the probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."). Nonetheless, "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to the plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Dixon*, 2020 WL 4600187 at *6, *quoting Brantley v. Burrows*, 2015 WL 13620413, at *3 (E.D. Pa. Nov. 19, 2015). *See also Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788 (3d Cir. 2000); *Montecalvo v. North Franklin Township*, 2019 WL 2579973, at *7 (W.D. Pa. 2019).

---

[6] *Dreibelbis v. Clark*, 813 Fed. App'x 64, 68 (3d Cir. May 6, 2020) *citing Miller v. Mitchell*, 598 F.3d 139, 154-55 (3d Cir. 2010) (if a First Amendment retaliation claim is based on a criminal prosecution (in other words, retaliatory prosecution), "the plaintiff must allege and prove lack of probable cause as an element of causation."); *Townsend v. City of Chester*, 2020 WL 4347368, at *6 (E.D. Pa. July 29, 2020) *quoting Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) ("The elements of a malicious prosecution claim are: […] defendant "initiated the proceeding without probable cause …").

10

Probable cause "is not a high bar[.]" *Kaley v. United States*, 571 U.S. 320, 338 (2014). Probable cause need only exist as to <u>any</u> offense that could be charged under the factual circumstances. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) *citing Edwards v. City of Philadelphia*, 860 F.2d 568, 575-76 (3d Cir. 1988). *See also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (There need not have been probable cause for the charge stated at the time of arrest; what matters is whether there was probable cause to arrest for any offense.). Probable cause "exists if there is a fair probability that the person committed the crime" (*Montecalvo*, 2019 WL 2579973, at *7, *quoting Dempsey v. Bucknell Univ.*, 824 F.3d 457, 467 (3d Cir. 2016)) and "does not require that officers currently resolve conflicting evidence or that their determinations of credibility … were, in retrospect, accurate." *Id. quoting Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005). Here, there was probable cause to charge Ms. Eaton with <u>an</u> <u>offense</u>.

According to Defendants' version of events, there are several facts that support the existence of probable cause for Ms. Eaton's arrest, but many of these factual statements upon which Defendants base their argument are disputed by Plaintiff.[7] However, after setting aside those facts as to which there is a genuine factual dispute, the Court is left with the following undisputed facts:

- As a signatory to the Agreement with Millcreek Township, Ms. Eaton knew what property belonged to Millcreek Township because the Agreement explicitly identified it as such. ECF No. 129, at ¶¶ 1-2, 5-7; ECF No. 139, at ¶¶ 1-2, 5-7.

- Ms. Eaton had access to the premises, because she had keys to the building. *Id.* at ¶ 4; *id.* at ¶ 4.

---

[7] Defendants specifically point to the following: ECF No. 129, at ¶¶ 19-21, 23-26, 38, 49-51, 75, 77, 94-95, 102, 107, and 110. The Court does not take those Concise Statements into account as they are contested by Plaintiff. *See* ECF No. 139.

11

- During the police investigation, a witness identified Plaintiff as the person who made arrangements for laborers to remove the missing property and who later confirmed that the laborers had moved the property. *Id.* at ¶¶ 55-57; *id.* at ¶¶ 55-57.

- Several weeks later the missing property reappeared in the former JOY Center space; a location that Plaintiff continued to have ability to access. There were no signs of forced entry immediately following the reappearance of the property. *Id.* at ¶¶ 66, 69, 71; *id.* at ¶¶ 66, 69, 71.

In order to determine "[w]hether any set of facts establishes probable cause requires an examination of the elements of the crime at issue." *Montcalvo*, 2019 WL 2579973, at *6, *quoting Wright*, 409 F.3d at 602.

*Theft by Unlawful Taking*

The uncontested facts do not provide enough circumstantial evidence to support the existence of probable cause to charge Ms. Eaton with Theft by Unlawful Taking. A witness identified Ms. Eaton as the person who arranged for the removal of the property and confirmed that the property had been removed. At first blush, this witness identification seems sufficient to charge Ms. Eaton with Theft by Unlawful Taking as the witness specifically identified her as the person who "exercise[d] unlawful control over the movable property of another with the intent to deprive him thereof" as stated in the statute. *See* 18 Pa.C.S. § 3921(a). However, the statute itself defines "deprivation" as withholding the property "permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation..." *See* 18 Pa.C.S. § 3901. Indeed, the Superior Court of Pennsylvania has summarized the elements of this crime as "(1) unlawful taking or unlawful control over movable property; (2) movable property belongs to another; and (3) intent to deprive (permanently)." *Commonwealth v. Rooney*, 2015 WL 6114341, at *3 (Pa. Super. 2015) *quoting Commonwealth v. Young*, 35 A.3d 54, 62 (Pa.Super.2011) (parenthetical in original).

12

The undisputed facts demonstrate that on the date the charges were filed there was no factual basis to support an intent to deprive Millcreek Township of the property permanently. The factual record reveals that by the time the criminal complaint was filed on November 19, 2014, the property on which this charge is based had been returned to Millcreek Township for over a month. Importantly, the record also reflects that the Police and the Supervisors knew that the missing property had been returned and the Criminal Complaint itself indicates that the property had been returned. Because the property had been returned prior to the filing of the criminal charges, there was no probable cause to charge Ms. Eaton with Theft by Unlawful Taking.

*Receiving Stolen Property*

Because the elements of Receiving Stolen Property differ from the elements of Theft by Unlawful Taking, the analysis reaps a different result: the uncontested facts do provide sufficient circumstantial evidence to support the existence of probable cause to charge Ms. Eaton with Receiving Stolen Property.

A person is guilty of Receiving Stolen Property in Pennsylvania "if he intentionally receives, retains, or disposes of movable property of anther knowing that it has been stolen, or believing that it was probably been stolen, unless the property is received, retained, or disposed with the intent to return it to the owner." 18 Pa. C.S. § 3925(a). The statute defines "receiving" as "acquiring possession." *Id.* at § 3925(b).

Ms. Eaton arranged for the transport of items belonging to Millcreek Township from the JOY Center to another location. Here, the witness identification of Ms. Eaton as the person who arranged for the removal of the property factually supports probable cause for the offense of

13

Receiving Stolen Property. Additionally, police interviewed three laborers who remembered meeting with a woman from MECA named Lora or Lori about loading items of personal property into a truck bound for a flower shop on State Street. Ms. Eaton owes a flower shop on State Street. Given the existence of probable cause based on these facts, Ms. Eaton's legal claims are defeated.

*Trespass*

Whether probable cause existed to support two charges of Trespass, as those crimes are defined by Pennsylvania statute[8], is a closer call on the undisputed facts before this Court. However, an inquiry into that is not necessary as the existence of probable cause to charge any offense defeats all of Plaintiff's civil rights claims here. *See Barna,* 42 F.3d at 819.

In Ms. Eaton's opposition to the motion for summary judgment, she argues that the final affidavit of probable cause excludes exculpatory evidence known to the police officers and that fact should defeat summary judgment. Specifically, she points to a draft affidavit of probable cause that contains some exculpatory evidence and that differs from the final affidavit filed. Despite her arguments, this is insufficient to defeat summary judgment. Although the factual record before the Court demonstrates that exculpatory evidence was excluded from the final affidavit, conflicts in evidence do not undermine an initial finding of probable cause. *Montecalvo,* 2019 WL 2579973, at *7 ("[N]either conflicts in evidence or the fact that an officer is ultimately wrong undermine an initial finding of probable cause...") (internal citation

---

[8] Criminal trespass is defined by Pennsylvania statute as one who knowing that she is not licensed or privileged to do so enters or surreptitiously remains in any building or occupied structure. *See* 18 Pa. C.S. § 3503(a)(1).

14

omitted). *See also Damico v. Harrah's Philadelphia Casino & Racetrack*, 674 F. App'x 198, 202 (3d Cir. 2016) *quoting Wright*, 409 F.3d at 603 ("Probable cause does not require that an officer's beliefs 'were, in retrospect, accurate' but rather looks to whether their beliefs were 'not unreasonable in light of the information the officers possessed at the time.'").

Summary judgment will be granted in favor of the individual Defendants on these claims.

### B. The Conspiracy Claim

As indicated in this Court's Memorandum Opinion on the motion for judgment on the pleadings, Ms. Eaton's conspiracy claim is not precise; however, because the complaint did aver sufficient conspiratorial conduct among the individual Defendants, the conspiracy claim was allowed to proceed. *See* ECF No. 105, page 13.

A conspiracy claim only arises under 28 U.S.C. § 1983[9] if there is an underlying violation of a federal or constitutional right. *Quiah v. Devereux Foundation, Inc.*, 2020 WL 5645696, at *8 (E.D. Pa. Sept. 22, 2020) ("Because her federal malicious prosecution and abuse of process claims fail, Plaintiff cannot invoke § 1983 in a vacuum as the basis for a [conspiracy] claim."); *Guziewicz v. Gomez*, 2020 WL 4431558, at *11 (M.D. Pa. July 31, 2020) ("the grant of summary judgment is proper on a conspiracy claim where a plaintiff cannot establish an underlying violation of any constitutional rights. Thus, because the Probation Defendants administrative remedies entitled to judgment as to the constitutional claims, they are *ipso facto* entitled to judgment on the conspiracy claim.") (internal citation omitted). As discussed above, the evidence

---

[9] Although not pled with specificity, this Court will presume that Ms. Eaton's conspiracy claim is brought pursuant to 28 U.S.C. § 1983 as her argument is limited to this statutory provision in her opposition brief. *See* ECF No. 135.

15

demonstrates that Ms. Eaton's constitutional rights were not violated and summary judgment will be granted in favor of the individual Defendants on those claims.

While some of the factual disputes and some of the evidence add a conspiratorial flavor to this lawsuit, the law is clear that there can be no conspiracy without an underlying violation of constitutional rights. Accordingly, because Ms. Eaton's underlying claims fail, so too does any claim of conspiracy. Summary judgment will be granted in favor of Defendants.

### C. The *Monell* Claim

Ms. Eaton's *Monell* claim against Millcreek Township fails because it is derivative in nature. A *Monell* claim against a municipality will not lie where, as here, a plaintiff "suffered no constitutional injury at the hands of an individual police officer." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). There is no underlying constitutional violation by an agent of Millcreek Township. Accordingly, without such a violation, Millcreek Township cannot be liable. *See Mills v. City of Harrisburg*, 350 Fed App'x 770, 773 n.2 (3d Cir. 2009) ("Absent an underlying constitutional violation by an agent of the municipality, [...] the municipality itself may not be held liable under § 1983"); *Kelly v. O'Malley*, 328 F.Supp.3d 447, 462 (W.D. Pa. 2018) ("Since the Court has found no underlying violation of rights under Section 1983 …, the *Monell* claim fails on that basis."), *aff'd in part, vacated in part and remanded on other grounds*, 787 Fed. App'x 102 (3d Cir. 2019); *Jackson v. City of Pittsburgh*, 2011 WL 3443951, at *27 (W.D. Pa. 2011), *aff'd sub nom. Jackson v. City of Pittsburgh Pa.*, 492 Fed. App'x 297 (3d Cir. 2012) ("It is well-established that Plaintiff's § 1983 claim against the City of Pittsburgh under *Monell* is 'derivative' in nature").

Summary judgment will be granted in favor of Millcreek Township.

An appropriate order follows.